UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Western Division

MICHAEL HOOTSTEIN,

     Plaintiff

     v.

TOWN OF SHUTESBURY,
POLICE CHIEF KRISTIN BURGESS &
MARY ANNE ANTONELLIS,
in their individual and official capacities,

     Defendants

Civil No.
JURY DEMAND

## COMPLAINT

## INTRODUCTION

1)      The Plaintiff seeks compensatory and punitive money damages under *42 U.S.C. § 1983* for Municipal Defendants' conscience shocking deprivations (under the color of law) of his rights to free speech and bodily integrity, free from "viewpoint discrimination", unreasonable police seizure and excessive force, guaranteed under the 1st, 4th and 14th Amendments to the Constitution.

2)      Plaintiff also seeks compensatory and punitive money damages for Municipal Defendants' conscience shocking deprivations (under the color of law) of Plaintiff's rights secured by the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, s. 11 I.

3)      Municipal Defendants individually and jointly maintain customs or practices calculated to retaliate against, criminally harass, threaten, intimidate and coerce the 70-year-old Plaintiff hydrogeologist, to silence him and dissuade him from engaging in constitutionally protected

1

speech in opposition to the building of a new Public Library and Community Gardens on a dangerously contaminated 21-acre town-owned hazardous waste dump known as "Lot O-32".

4)      Plaintiff's protected speech and activity was the substantial or motivating foundation upon which Municipal Defendants constructed their customs. patterns or practices, that went so far as to corruptly call for Plaintiff's unreasonable seizure, handcuffing with excessive force and the filing of false police complaints and reports against him.

5)      Plaintiff, a law-abiding citizen who seeks only to protect and preserve the Constitution of the United States for himself, his family, future generations and community, was not charged with a crime and did not commit a crime.

## JURISDICTION

6)      This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.  Title 28 U.S.C.  § 1331 and § 1343 provide federal question jurisdiction over all federal claims, and Title 28 U.S.C.  § 1367 provides supplemental jurisdiction over state law claims.

## PARTIES

7)      Plaintiff Michael Hootstein is and has been a resident of Shutesbury, Massachusetts for 24 years.

8)      Defendant Town of Shutesbury is a "person" within the meaning of *42 U.S.C. § 1983* and a municipal corporation organized under the laws of the Commonwealth with its principal office located at 1 Cooleyville Rd., Shutesbury, Massachusetts 01072.  The Town's actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the Town of Shutesbury.

9)      Defendant Kristin Burgess was at all times relevant to this complaint the duly appointed

2

Shutesbury Chief of Police.  Her actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the Town of Shutesbury. She is sued in her individual and official capacities.

10)     Defendant Mary Anne Antonellis was at all times relevant to this complaint the duly appointed Shutesbury Library Director.  Her actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the Town of Shutesbury. She is sued in her individual and official capacities.

## FACTS

11)     On December 13, 2021, the Office of the Attorney General ("AG") found the Shutesbury Board of Health ("BOH") violated the Open Meeting Law pursuant to Plaintiff's complaint, "by deliberating outside of a posted meeting… via an April 22 email".

12)     The April 22, 2021 email written by BOH Member Werner was sent to the shared BOH email account, to the Plaintiff and to the Town Administrator, to punish and silence the Plaintiff and damage his reputation by defamation/libel, so as to dissuade him from filing any more protected complaints against the Shutesbury Board of Health, as follows:

> "I am appalled that you have the audacity to suggest otherwise – shame on you!  Your comments directed at the BOH and the hard working individuals you disparaged, deserve an apology.  It is YOUR hurtful, hostile and defamatory attacks that require an apology.  Your attempts to bully and demean this incredibly qualified town board is both inappropriate and unacceptable.  Therefore Michael, I respectfully request that you apologize to the board and the individuals that you have been harassing… Town Administrator, I would like to raise a formal complaint against Mr. Hootstein for his ongoing and unfounded harassment of the BOH.  His contributions to the town have been nothing short of demeaning and unproductive." (Plaintiff's June 16, 2021 Open Meeting Law Complaint, Exhibit 11)

13)     On or about July 21, 2022, Defendant Library Director Antonellis complained to Defendant Police Chief Burgess about Plaintiff being "dangerous", inferring the need for a police background check.

14)     The Plaintiff has reason to believe Defendant Chief of Police and Ms. Antonellis jointly

3

performed a CORI search of Plaintiff's records (on or about July 21, 2023, to corruptly dig up dirt against him.

15) On or about July 21, 2022, Defendant Antonellis disseminated a defamatory email about the Plaintiff hydrogeologist, asserting a libelous claim that the practicing Plaintiff hydrogeologist (BS in Geology, University of Massachusetts, Amherst, 1993) is "not qualified" (doing business as Legacy Environment Group, "dedicated to the protection of drinking water and human health") to publicly comment as a town citizen upon matters of public importance or public health.

16) At about 9:00 AM Friday, November 18, 2022, Plaintiff parked his car at the proposed library site on Lot O-32, where the DEP Director of the Underground Well Injection Control Program was overseeing the excavation and testing of a drain pipe pursuant to a protected complaint the Plaintiff Hydrogeologist filed with DEP.

17) The Plaintiff went to Lot O-32 to observe DEP officials oversee the investigation and testing for contaminants by the town's environmental consultants.

18) The Plaintiff hydrogeologist was at Lot O-32 on behalf of his 20 member 21E Public Involvement Plan ("PIP") group, authorized to participate and observe the excavation and testing of soil at Lot O-32 under MassDEP regulations and *M.G.L. c. 21E, section 14, Response Actions at Site; Meetings: Public Notice and Participation*.

19) As soon as Plaintiff got out of the car and started walking out to the field where approximately 9 people were gathered around a parked back hoe to dig up the floor drain of a demolished 3-bay automotive garage where reportable concentrations of PCB and PFAS6 have been found, he was accosted by Defendant Antonellis who got in his face, blocked his path and spitefully warned him he was not "allowed" on the town-owned public property.

20) Every time he tried to walk around Defendant Antonellis without touching her, she used

her body to physically block his path forward.  He bobbed and weaved to get around the crazed woman without touching her and moved towards the group assembled by a parked back hoe.

21)     He was relieved to see a Shutesbury Police Officer in the group.  He walked towards him. But Defendant Antonellis repeatedly stood in his way and put her angry snarling face a few inches away from Plaintiff's face, so close Plaintiff felt Defendant Antonellis's spittle on his face.

22)     Plaintiff warned Defendant Antonellis in front of the assembled group that she was infringing on his personal space and if she didn't move back he would ask the Officer to arrest her.

23)     Defendant Antonellis quickly moved away and the Officer and Defendant had a conversation Plaintiff openly (and legally) recorded on his iPhone, linked here:

https://drive.google.com/file/d/1zrlArOBakFQ7xcspub-VAxw-VNfLYjGe/view?usp=sharing

24)     As the viewer can see and hear, Shutesbury Police Officer Nathaniel Masse calmly, ably and professionally diffused the situation and informed Defendant Antonellis that neither he nor she had grounds to remove the Plaintiff or anybody else from observing the digging/testing at the town-owned Public Involvement Plan 21E site.

25)     After Police Officer Masse diffused the situation, the Plaintiff hydrogeologist spent an enjoyable 4-5 hours observing and discussing the excavation and testing of contaminated drain line soils he helped identify and photograph 12 years ago, for use by DEP that day to pinpoint the exact location of the drain line for all the assembled on November 18, 2022.

26)     When the Plaintiff returned home, he left a voice message with Shutesbury Police Chief Burgess to praise Officer Masse for calmly, ably and professionally diffusing the situation and informing Defendant Antonellis that she did not have grounds to remove the Plaintiff or anyone else from LotO-32 to observe the excavation and testing of the contaminated drain line.

5

27)     Defendant Police Chief Burgess returned Plaintiff's phone call on Monday, November 21, 2022.  Plaintiff was shocked the Defendant Police Chief didn't want to hear any of Plaintiff's compliments for Officer Masse or view the video Plaintiff took evidencing Officer Masse's calm, able, professional diffusing of Defendant Antonellis's physical interference, threats, intimidation and coercion directed at the Plaintiff 70-year-old hydrogeologist.

28)     To the contrary, Defendant Police Chief Burgess verbally assaulted the Plaintiff over the phone and insinuated Officer Masse was in the wrong for not kicking the Plaintiff hydrogeologist off Lot O-32 because his presence made Defendants Antonellis and Chief Burgess "feel unsafe".

29)     When Plaintiff complained to Defendant Chief Burgess about how her erratic angry confrontational conduct made the Plaintiff and other members of his Lot O-32 Public Involvement Plan Site feel intimidated and "unsafe", Chief Burgess lost it, yelled at Plaintiff "You don't make me feel safe", and hung up the phone.

30)     Plaintiff's wife and young grandson overheard Chief Burgess' verbal assault directed at the Plaintiff.  This frightened the hell out of them all.

31)     Four days later, on November 22, 2022 at a Shutesbury Select Board meeting,  the Chair of the Select Board and Defendants Burgess and Antonellis, all lied about what occurred on November 18, 2022 at Lot O-32.  The meeting is linked here:

https://us02web.zoom.us/rec/share/1Js8tQFFpw2nT7GwAAehI5ztUaing9-

3wkREfoMEKAbsq3iirL8_BIOWZlnetYvD.VH1VLKX4_zJLziGX

Passcode: ?ca5P2Zg

32)     On April 1, 2023, the Plaintiff, a PIP Petitioner (DEP Release Tracking Numbers RTN 1-21489 & RTN 1-18707) filed a protected complaint with the DEP and the Town of Shutesbury:

"Whereas, Shutesbury continues to mislead DEP and Shutesbury residents alike about the foreseeable risks posed to public health, safety and finances associated with constructing a

public library on the dangerously contaminated 21-acre military site at 66 Leverett Road. I herein petition my Shutesbury government for redress of harms and ask the town to please incorporate: **1)** my PIP Petitioner comments and concerns itemized below; **2)** my ***June 23, 2022 Report – "Please perform a full audit and take emergency corrective action to compel Shutesbury RTN 1-21489 & RTN 1-18707 compliance with 21EIMCP"***; **3)** my ***January 30, 2023 Report – "A Regulatory and Hydrogeologic Review of Shutesbury's January 28, 2023 Phase I Initial Site Investigation"***; and **4)** my ***February 28, 2023 Report – "the northern portion of the 66 Leverett Rd. property, NOT the Fire Station property, is the obvious source of the release of PFAS6 into private well water at 62 Leverett Road."***

"A total of six (6) Shutesbury residents who once lived at the burnt down house on the property or in one of three houses less than 300 feet downgradient to the east of the site (62, 60 and 50 Leverett Rd.), died prematurely, potentially due to toxic exposure to PFAS6/NAPL/VOC released from upgradient military, automotive, medical and household waste littered throughout the 21-acre "Dumping Ground… a facility or place used for the disposal of solid waste from one or more sources which is not established or maintained pursuant to a valid site assignment or permit in accordance with **M.G.L. c. 111, § 150A, 310 CMR 16: Assignment** *Regulations for Solid Waste Facilities* **or 310 CMR 19.000**."

33)     On April 12, 2023, Plaintiff filed a protected complaint with the Shutesbury Board of

Health:

"I herein file this NUISANCE COMPLAINT AGAINST THE TOWN OF SHUTESBURY with the Shutesbury Board of Health (BOH) under M.G.L. Chapter 111 "Public Health", Section 122 "Regulations Relative to Nuisances" and respectfully request an emergency BOH hearing to confirm or deny my fear that the historically contaminated town-owned 21E site… at 66 Leverett Rd. constitutes a NUISANCE because it encompasses an abundance of military, automotive and household waste disposal sites and contaminated fill that causes sickness, cancer and death within our community… A prompt response to my EMERGENCY NUISANCE COMPLAINT would be appreciated.  Time is of the essence."

34)     On April 18, 2023, at approximately 12:15 pm, the Plaintiff was driving west on Leverett

Road, Shutesbury, when he noticed a pick-up truck owned by the town's environmental consultant,

Fuss & O'Neill  was parked at the town-owned Lot O-32 site open to the public.

35)     He pulled his car over to take a short walk on a wooded path to see where Fuss & O'Neill

installed new observation wells to determine the extent of hazardous waste contamination on the

site as required under M.G.L. Chapter 21E, the state superfund law.

36)     He noticed a Fuss & O'Neill employee sitting in a company pick-up truck and walked over

to introduce himself.  Plaintiff asked if the new observation wells had been installed.

37)     The Fuss & O'Neill surveyor politely answered yes.  The Plaintiff wished him a good day and walked off in a southern direction towards the newly installed observation wells.  The sun was shining and it was a beautiful day for a walk.

38)     The Plaintiff took his $2^{nd} - 10^{th}$ photographs from 12:50 – 12:55 pm.  They all evidence damage to protected wetland resources by Fuss & O'Neill, in violation of a Shutesbury Conservation Commission enforcement order against the Town of Shutesbury.

39)     Plaintiff's 11th photograph taken at 12:55 pm shows a drilled hole with no well casing.

40)     Plaintiff noticed the Fuss & O'Neill surveyor walking towards him with a transit in tow.

41)     Plaintiff asked him why the drilled hole had no well casing.

42)     The surveyor responded that the drill hit "refusal" (bedrock).  Plaintiff thanked him.

43)     Plaintiff's 13th photograph shows a newly installed well with well casing protruding about 3 ft. above grade was taken at 12:57 pm.  The surveyor was setting his transit up near the well.  So to respect the surveyor's privacy, the Plaintiff made sure the surveyor was out of frame.

44)     From 12:57 – 1:05 pm, Plaintiff took more photographs of monitoring wells, etc. and headed north back to his car.

45)     At about 1:06 pm, Plaintiff observed Defendant Mary Anne Antonellis and Defendant Police Chief Burgess with "part-time" Officer Devon Pelletier walking south on a wooded path directly towards the Plaintiff who was walking back to his car parked off of Leverett Rd.

46)     Defendant Antonellis smirked at Plaintiff as she walked by heading south to meet up with the surveyor at Monitoring Well 9 – the most toxic (Thallium and other NAPL – toxic air and water exposure) hot spot on the 21-acre hazardous waste site.

47)     Police Chief Burgess physically blocked Plaintiff's path while Officer Pelletier stood close off to the side ready to assist in Plaintiff's take down.

48)    Plaintiff was afraid, shaken and chilled to the bone and asked Chief Burgess why she was detaining him in the middle of the woods on town-owned property open to the public.

49)    Police Chief Burgess is about Plaintiff's size 5' 10" or taller, around 200 lbs.  Plaintiff reports she was angry and intimidating when she physically blocked Plaintiff.

50)    The Police Chief wouldn't tell Plaintiff why she was detaining him but insinuated it had something to do with the Fuss & O'Neill surveyor he had just met and had pleasant communications with.

51)    Plaintiff pleaded with Chief Burgess and told her he didn't feel safe being detained by her and her subordinate in the middle of the woods with no witnesses.  He told the Defendant Chief the Shutesbury Police was being used by Library Director Antonellis to harass and intimidate him.

52)    Plaintiff suggested that the Chief go off and question the surveyor and Ms. Antonellis while the Plaintiff walked back to his car with Officer Pelletier to wait for the Chief to find out Defendant Antonellis had filed a false criminal complaint against the Plaintiff.

53)    Police Chief Burgess unreasonably denied this request and physically asserted her legal police authority to detain Plaintiff for questioning without reason or just cause.

54)    Plaintiff told the Chief and Officer Pelletier he felt intimidated and didn't feel safe.  He repeatedly asked why the Chief was "unlawfully" detaining him on public property, without reason or just cause, in violation of his constitutionally protected rights.

55)    Defendant Chief Burgess replied that she had the legal authority to detain the 70-year-old custodial grandfather and hydrogeologist, "to get to the bottom of what happened".  But she would not tell the Plaintiff what crime Ms. Antonellis or the surveyor accused him of.

56)    Plaintiff kept telling the Police Chief she was scaring him and what she was doing was wrong and unlawful.  Officer Pelletier stood by and witnessed Plaintiff's illegal arrest.

9

57)    Then, Chief Burgess escalated the situation by putting Plaintiff in a shoulder hold and attempted to physically drag the terrified elder, against his will, further into the woods, south towards the surveyor and Ms. Antonellis, so "we can all discuss this quietly as adults."

58)    Plaintiff pulled his body away from the unhinged Police Chief who patted her gun, taser and handcuffs holstered at her side to intimidate him.

59)    Defendant Chief Burgess got in Plaintiff's face and FALSELY accused him of asking her to "fix" a speeding ticket for his older grandson, a United States Marine. She insinuated she had a recording of Plaintiff's "illegal" request on a bodycam video she saved, as a threat to compel Plaintiff to go further into the woods to meet with the surveyor and Ms. Antonellis, so "we can all discuss this quietly as adults."

60)    Defendant Chief Burgess got angrier and angrier and ordered Plaintiff to go with her to have a discussion with the surveyor and Ms. Antonellis or else she would have to handcuff him.

61)    Upon Plaintiff's refusal to go with her, Chief Burgess and Officer Pelletier aggressively yanked Plaintiff's arms behind his back and handcuffed him causing the 70-year-old's arthritic elbows/shoulders/back/neck/hips to suffer immense physical pain.

62)    Again and again, Plaintiff asked the Police Chief to please interview the surveyor to prevent her "from creating even more liability for herself and our town, because of her unlawful conduct".

63)    Defendant again escalated the situation by again putting Plaintiff in shoulder hold with hands cuffed behind his back, in a second attempt to physically drag the Plaintiff further into the woods, to meet with the surveyor and Ms. Antonellis, so "we can all discuss this quietly as adults."

64)    Plaintiff pulled away and dropped to his knees, his hands painfully handcuffed behind his back. He had a panic attack. His heart started beating, "hands up don't shoot", afraid for his wife and grandsons who Chief Burgess mentioned by name scaring the hell out of him.

65)     All the Plaintiff could do to release the emotional distress, anguish and fear he felt inside, was to allow his tears to flow in grief for how this violent assault by the Shutesbury Police Chief would cause needless emotional distress to his family, friends and Shutesbury community.

66)     After approximately 10 minutes, during which time he was painfully handcuffed behind his back, down on his knees in the mud, eyes cloudy and irritated from the toxic mud in his left eye just a few days after cataract surgery, Chief Burgess told Plaintiff she would agree to take off the handcuffs if he agreed to stand up and "wait with her here".

67)     Plaintiff agreed to her demand and stood up.

68)     After the Chief removed the handcuffs, Plaintiff realized Officer Pelletier had left, hopefully to interview the surveyor and Ms. Antonellis.

69)     Ten minutes or so later, Officer Pelletier returned after interviewing the surveyor and Ms. Antonellis. Officer Pelletier reported there the surveyor's reporting of events agreed with Plaintiff's reporting of events, thus substantiating Plaintiff's position that the Chief had no justification for her unreasonable seizure and use of excessive police force on Plaintiff.

70)     Defendant Burgess told Plaintiff he was free to go, but she wanted to walk with him to convince him she had justification for her unreasonable seizure, excessive force and illegal arrest.

71)     Defendant Police Chief Burgess had the audacity to tell Plaintiff she "admired" his advocacy work in opposition to the building of a new Shutesbury Public Library and Community Gardens on the dangerously toxic Lot O-32 military/automotive/household waste dump.

72)     Chief Burgess summarized the reasons for her misconduct as follows: The surveyor contacted his Fuss & O'Neill Office after Plaintiff introduced himself. The Fuss & O'Neill Office contacted Defendant Antonellis who filed (by phone) a FALSE complaint with Defendant Chief,

alleging the Plaintiff was in the act of committing a crime that required emergency police intervention on Lot O-32, the proposed library site.

73)    Chief Burgess asked Plaintiff if he and others who felt "unsafe" around her would feel better if she moved her office out of Town Hall.  She seemed oblivious to the fact that she had just committed the felony crime of assault and battery on the elder Plaintiff.

74)    As they parted ways at approximately 1:59 pm, Chief Burgess told Plaintiff she was going to speak with Ms. Antonellis and "give her a good talking to" for the filing of a false criminal complaint.

75)    At approximately 2:27 pm, Plaintiff called Chief Burgess and asked her if she had recorded a bodycam video of his ordeal. She replied that, "unfortunately I do not.  I had to run out on the emergency phone call from Mary Anne [Defendant Antonellis] so I didn't have time to grab it... whoops, it's against department policy and I'll probably get in trouble."

76)    Plaintiff called Chief Burgess and asked her if she had recorded a bodycam video of when she alleged the Plaintiff asked her to "fix" a speeding ticket 3 years ago for his 22-year-old grandson, a United States Marine.  She said she doesn't have it anymore.

77)    As a direct and proximate result of Municipal Defendants' joint and individual conduct under color of law, the Plaintiff suffers physical and emotional injury, fear, mental anguish, anxiety, insomnia, shock, damage to reputation by defamation and associated legal costs.

### COUNT I – First Amendment Retaliation Claim under 42 U.S.C. § 1983
### Against All Municipal Defendants

78)    The above paragraphs are incorporated by reference.

79)    Plaintiff engaged in speech that is protected by the First Amendment.

80)    Plaintiff's speech was critical of Municipal Defendants, and it drew unwelcome public attention to Municipal Defendants' actions and inactions.

81)     In response, Municipal Defendants acted under color of law with discriminatory "viewpoint" animus to punish the Plaintiff and subject him to an array of adverse actions, to frighten the Plaintiff so as to obstruct his scientific investigation of toxic dangers at Lot O-32 (the proposed library site) and coerce/dissuade him from filing any more protected complaints against Municipal Defendants, partisan "Friends of the [proposed] Library" benefactors all.

82)     Plaintiff's protected speech and activities was a substantial or motivating factor in Municipal Defendants' adverse actions against him.

83)     Defendants' actions violate the Plaintiff's right to free expression under the First Amendment to the U.S. Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. §1983.

84)     Municipal Defendants' actions were taken in reckless disregard of Plaintiff's well-established constitutional rights.

85)     As a direct and proximate result of Municipal Defendants' actions under color of law, the Plaintiff suffered the damages described above.

## COUNT II – Fourth and Fourteenth Amendment Claim
## under 42 U.S.C. § 1983 against Municipal Defendants Police Chief Burgess & Antonellis

86)     The above paragraphs are incorporated by reference.

87)     Defendants, Burgess and Antonellis initiated an unreasonable seizure of Plaintiff

88)     Defendants, Burgess and Antonellis used excessive force against the Plaintiff.

89)     Defendants, Burgess's and Antonellis's actions were taken in reckless disregard of the Plaintiff's well-established constitutional rights.

90)     Defendants, Burgess and Antonellis violated Plaintiff's Fourth Amendment rights when they acted with deliberate indifference to Plaintiff's constitutional rights.

91)    Defendants, Burgess and Antonellis, jointly contrived false police reports and CORI background checks and subjected the Plaintiff to an intrusive, unjustified police seizure with excessive force without any basis for believing the Plaintiff had engaged in criminal activity.

92)    Defendants, Burgess and Antonellis deprived Plaintiff of his fundamental due process liberty right to bodily integrity protected under the 14th Amendment.

93)    Defendants, Police Chief Burgess's and Antonellis's actions were taken in reckless disregard of Plaintiff's well-established constitutional rights.

94)    As a direct and proximate result of Defendants, Police Chief Burgess's and Antonellis's actions, the Plaintiff suffered the damages described above.

<u>COUNT III — Monell Liability Claim under 42 U.S.C. § 1983</u>
<u>Against the Defendant Town of Shutesbury (a "person")</u>

95)    The above paragraphs are incorporated by reference.

96)    Defendant Town of Shutesbury officials were and are at all times relevant, jointly and individually engaged in making policies. customs or practices under color of law.

97)    Defendant Town of Shutesbury's customs or practices alleged herein are so well settled and widespread that the customs or practice making officials of the municipality can individually be said to have either actual or constructive knowledge of it yet did nothing to end the custom or practice.

98)    Municipal Defendants maintain customs or practices machinated to chill free speech of Shutesbury residents who oppose the siting of a public library on Lot O-32, in the instant matter, to silence a member of a 21E Public Involvement Plan ("PIP") group duly authorized by M.G.L. c. 21E, section 14 to participate in the investigation and remediation of Lot O-32.

99)    Municipal Defendants maintain official customs or practices machinated to embolden town officials like Defendants Burgess and Antonellis, to file false police complaints and reports

against the Plaintiff, for the corrupt purpose of subjecting political opponents like the Plaintiff to threats, intimidation, coercion and unreasonable police seizure with excessive force.

100)   All Town of Shutesbury actions and inactions numerated above were taken in reckless disregard of Plaintiff's well-established constitutional rights.

101)   As a direct and proximate result of Defendant Town of Shutesbury's well settled customs or practices calculated to deprive the Plaintiff of his First, Fourth and Fourteenth Amendment rights, the Plaintiff suffered the damages described above.

## COUNT IV – Massachusetts Civil Rights Act M.G.L. c. 12, § 11I Claim Against All Municipal Defendants

102)   The above paragraphs are incorporated by reference.

103)   Municipal Defendants jointly threatened, intimidated, criminally harassed, assaulted and handcuffed the Plaintiff, to coerce and dissuade the Plaintiff hydrogeologist from filing any more protected complaints related to Lot O-32 groundwater contamination and harm to human health.

104)   In manner above, all Municipal Defendants violated Plaintiff's civil rights under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I, by threats, intimidation, and coercion.

105)   As a direct and proximate result of all Municipal Defendants' actions, the Plaintiff suffered the damages described above.

## COUNT V – Intention Infliction of Emotional Distress Against All Municipal Defendants

106)   The above paragraphs are incorporated by reference.

107)   Municipal Defendants' outrageous conduct in causing, prolonging, obscuring and concealing their joint and individual violations of Plaintiff's civil rights under 42 U.S.C. § 1983 and under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I, by threats, intimidation, and coercion, exceeds all bounds of decency in a civilized society.

15

108)   Municipal Defendants' outrageous conduct was intentional and/or reckless and made with conscious disregard for the rights and safety of Plaintiff.

109)   Municipal Defendants' outrageous conduct caused severe distress to Plaintiff.

110)   Municipal Defendants' outrageous conduct was the proximate cause of Plaintiff's injuries.

111)   As a direct and proximate result of Municipal Defendants' conduct described herein and/or Defendants' failures to act, Plaintiff has suffered intentional infliction of emotional distress, and this has caused (and will cause) him past, present and future injuries, as described herein.

112)   WHEREFORE, Plaintiff seeks an award of damages, pursuant to a verdict entered by the jury empaneled in this cause, of both compensatory and punitive damages to compensate him for the damages he has suffered as a result of the actions of Municipal Defendants, but in any event in an amount in excess of $75,000.00.

## COUNT VI - PUNITIVE DAMAGES

113)   Upon information and belief, Municipal Defendants engaged in willful, wanton, malicious, and/or reckless conduct that caused the foregoing damage, disregarding the rights of Plaintiff.

114)   Municipal Defendants have caused great harm to the 70-year-old Plaintiff's health and demonstrated an outrageous conscious disregard for Plaintiff's safety with implied malice, warranting the imposition of punitive damages.

115)   WHEREFORE, Plaintiff seeks an award of damages, pursuant to a verdict entered by the jury empaneled in this cause, of both compensatory and punitive damages to compensate him for the damages he has individually suffered as a result of the actions of Municipal Defendants, but in any event in an amount in excess of $75,000.00.

    **WHEREFORE**, Plaintiff requests that this Court:

    1.   Award compensatory and punitive money damages;

2.  Award the cost of this action, including reasonable attorney's fees; and

3.  Award such other further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

A jury trial is hereby demanded.


Respectfully submitted on May 17, 2023,


*/s/ Michael B. Hootstein*
Michael B. Hootstein, Pro Se