UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL HOOTSTEIN, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Case No. 3:23-30057-KAR |
| | ) | |
| TOWN OF SHUTESBURY,  POLICE | ) | |
| CHIEF KRISTIN BURGESS & MARY | ) | |
| ANNE ANTONELLIS, in their | ) | |
| individual and official capacities, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d) AND
MOTION FOR SANCTIONS; DEFENDANTS' SECOND MOTION PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 56(d); DEFENDANTS' THIRD
MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d); and
PLAINTIFF'S MOTION FOR COURT ORDER TO DENY DEFENDANTS'
FRIVOLOUS AND UNSUPPORTED 56(d) MOTIONS (DOCS. 35, 43, 45) BASED ON
THE FACTS, THE LAW AND DEFENDANTS' FRAUD ON THE COURT**
(Dkt. Nos. 35, 43, 45, 59)

I.      **Introduction**

        In this action, self-represented plaintiff Michael Hootstein ("Plaintiff") asserts claims

pursuant to 42 U.S.C. § 1983 of retaliation for the exercise of his First Amendment rights (Count

I), violation of his rights under the Fourth and Fourteenth Amendments (Count II), and *Monell*

liability against the Town of Shutesbury (Count III); a claim pursuant to the Massachusetts Civil

Rights Act, Mass. Gen. Laws ch. 12, § 11I ("MCRA") (Count IV); a claim for intentional

infliction of emotional distress (Count V); and a free-standing claim for punitive damages (Count

VI).  The defendants are the Town of Shutesbury ("Town"), its police chief, Kristin Burgess

("Burgess"), and its library director, Mary Anne Antonellis ("Antonellis") (collectively,

"Defendants") (Compl. ¶¶ 8-10).  The parties consented to this court's jurisdiction for all

purposes through trial (Dkt. No. 14).  *See* Fed. R. Civ. P. 73(b); 28 U.S.C § 636(c).  Before the

1

court are Defendants' three motions filed pursuant to Fed. R. Civ. P. 56(d) ("Rule 56(d)") in response to three separate motions for partial summary judgment filed by Plaintiff.  Having carefully considered the parties' submissions, including Plaintiff's June 20, 2024, motion for a court order denying Defendants' Rule 56(d) motions, for the reasons set forth below, Defendants' Rule 56(d) motions are GRANTED and Plaintiff's motion for a court order denying Defendants' Rule 56(d) motions is DENIED.

## II.    Relevant Background

Plaintiff filed his complaint on May 18, 2023 (Dkt. No. 1).  Defendants filed an answer on August 24, 2023 (Dkt. No. 17), and an amended answer on September 12, 2023 (Dkt. No. 22).  The court convened a Rule 16 scheduling conference on October 12, 2023, at which it established an October 27, 2023, deadline for the exchange of initial disclosures and an August 12, 2024, deadline for completion of non-expert discovery (Dkt. Nos. 27, 30).

On November 13, 2023, Plaintiff filed a motion for partial summary judgment as to his Fourth Amendment claims in Count II (Dkt. No. 31), arguing that notwithstanding the "smorgasbord of unreliable, contradictory and implausible" information contained in police reports, they "allow a reasonable fact finder to conclude that there is no genuine dispute as to any material fact entitling Plaintiff to judgment as a matter of law on his Fourth Amendment claims" (Dkt. No. 32 at 1).  In Plaintiff's complaint, in support of this claim, he alleges that Burgess and Antonellis "jointly contrived false police reports and CORI background checks and subjected [him] to an intrusive, unjustified police seizure with excessive force without any basis for believing the Plaintiff had engaged in criminal activity" (Compl. ¶ 91).  The primary basis for this claim appears to be Plaintiff's April 18, 2023, encounter with Burgess which, he alleges, was instigated by a false report made by Antonellis (Compl. ¶¶ 45-74).  Defendants responded to

Plaintiff's first motion for partial summary judgment by filing their first Rule 56(d) motion 21 days later, representing that, while the parties had exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A), no other discovery had taken place (Dkt. No. 35-1 at 2, ¶ 7). As such, Defendants asserted that they could not present facts essential to justifying an opposition to Plaintiff's motion for partial summary judgment on his Fourth and Fourteenth Amendment claims (Dkt. No. 35 at 3).

On February 7, 2024, Plaintiff filed a motion for partial summary judgment on his First Amendment retaliation claims (Dkt. No. 37). According to the complaint, Defendants, including the Town, "subject[ed] [Plaintiff] to an array of adverse actions," which the complaint does not specify, to retaliate against Plaintiff and dissuade him from continuing to pursue his investigation of environmental hazards at a site that the Town had selected for a proposed new library (Compl. ¶ 81). In response, 21 days after Plaintiff filed his motion, Defendants filed their second Rule 56(d) motion, representing that, beyond providing his name, age, mailing address, and the information that he had never been convicted of a felony or misdemeanor and never filed for bankruptcy, Plaintiff had not provided any substantive responses to Defendants' interrogatories, had not produced any documents in response to Defendants' document production requests, and had not been deposed (Dkt. No. 43 at 3), such that they could not present facts essential to justify an opposition to Plaintiff's second motion for partial summary judgment (Dkt. No. 43 at 4).

Plaintiff filed his third motion for partial summary judgment on his claims under the MCRA and for intentional infliction of emotional distress on February 26, 2024 (Dkt. No. 40). According to Plaintiff's complaint, Defendants "jointly threatened, intimidated, criminally harassed, assaulted and handcuffed" Plaintiff to dissuade him from continuing to file complaints related to contamination on the site on which the Town proposed to build its new library (Compl.

¶ 103).  These actions, Plaintiff further alleges, were outrageous and caused him severe emotional distress (Compl., ¶¶ 103-04; 107-11).  Again, 21 days later, Defendants responded with a Rule 56(d) motion, reiterating that Plaintiff had not provided substantive responses to Defendants' written discovery requests and had not been deposed, such that they could not present facts essential to justifying an opposition to Plaintiff's third motion for partial summary judgment (Dkt. No. 45 at 4).

The court heard argument on Defendants' Rule 56(d) motions on May 23, 2024, and took the motions under advisement (Dkt. No. 49).  In the discussion below, the court will not decide the merits of the parties' disputes, but it will address certain factual allegations or disputes as necessary to provide context for the Rule 56(d) issues.  *See Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 861 (7th Cir. 2019) (observing in the context of ruling on the plaintiffs' Rule 56(d) motion that "[w]e do not decide the merits of the parties' dispute, though we must discuss the merits along the way to provide context for the Rule 56(d) issue").

### III.    Applicable Legal Standards

Rule 56(d)[1] provides as follows:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a summary judgment motion], the court may:

    (1) defer considering the motion or deny it;

    (2) allow time to obtain affidavits or declarations or to take discovery; or

    (3) issue any other appropriate order.

---

[1] "'Rule 56(d) was formerly Rule 56(f),' and 'the textual differences between current Rule 56(d) and former Rule 56(f) are purely stylistic.'"  *In re PHC, Inc. S'holder Litig.*, 762 F.3d 138, 143 n.2 (1st Cir. 2014) (quoting *Nieves-Romero v. United States*, 715 F.3d 375, 381 n.3 (1st Cir. 2013)).  As such, "'case law developed under former Rule 56(f) remains controlling, and [courts] cite to it where applicable.'"  *Id.* (quoting *Nieves-Romero*, 715 F.3d at 381 n.13).

"The First Circuit has cautioned that 'trial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery.'" *Angelo v. USA Triathlon*, Civil Action Nos. 13-cv-12177-ADB, 14-cv-14260, 2016 WL 126248, at *2 (D. Mass. Jan. 12, 2016) (quoting *Vélez v. Awning Windows, Inc.*, 375 F.3d 35, 39 (1st Cir. 2004)). "'Rule 56(d) serves a valuable purpose.'" *In re PHC*, 762 F.3d at 143 (quoting *Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc.*, 730 F.3d 23, 28 (1st Cir. 2013)). "It 'provides a safety valve for claimants genuinely in need of further time to marshal "facts, essential to justify [their] opposition … to a summary judgment motion."'" *Id.* (quoting *Reid v. New Hampshire*, 56 F.3d 332, 341 (1st Cir. 1995) (alteration in original)). In the First Circuit, district courts are instructed to "'construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter.'" *Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 724 (1st Cir. 2022) (quoting *Resolution Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994)). Most often, "the crucial inquiry under Rule 56(d) is whether the movant has had a full and fair opportunity to conduct discovery needed to mount an effective opposition to a summary judgment motion." *Id.* at 724 (citing *Rivera-Almodóvar*, 730 F.3d at 28). "When the movant shows that she has not had such an opportunity, 'a strong presumption arises in favor of relief.'" *Id.* (quoting *N. Bridge Assocs.*, 22 F.3d at 1203).

The First Circuit has established a carefully articulated test applicable to Rule 56(d) motions:

> In order to gain the benefit of Rule 56(d), the party opposing summary judgment must make a sufficient proffer: the proffer should be authoritative; it should be advanced in a timely manner; and it should explain why the party is unable currently to adduce the facts essential to opposing summary judgment. If the reason the party cannot adduce the facts essential to opposing summary judgment is incomplete discovery, the party's explanation (i.e., the third requirement)

should: (i) show good cause for the failure to have discovered the facts sooner; (ii) set forth a plausible basis for believing that specific facts probably exist; and (iii) indicate how the emergent facts will influence the outcome of the pending summary judgment motion.  Thus, in a case involving incomplete discovery, the Rule 56(d) proffer requirements can be categorized as: authoritativeness, timeliness, good cause, utility, and materiality.  These requirements are not inflexible and one or more of the requirements may be relaxed, or even excused, to address the exigencies of a given case.

*In re PHC*, 762 F.3d at 143-44 (citations, internal quotation marks, and modifications omitted).

## IV.    Discussion

Although there are common aspects with respect to the analysis of each of Defendants' Rule 56(d) motions, the second and third motions were filed after Defendants served written discovery and Plaintiff served responses thereto.  Further, each of Plaintiff's motions for partial summary judgment seeks judgment on a different claim or claims, and, while there are consistent aspects to Defendants' asserted need for discovery as to all of these claims, the court considers it appropriate to address each motion separately.

### A.    Defendants' First Rule 56(d) Motion

As to Defendants' first Rule 56(d) motion relating to Plaintiff's motion for summary judgment on his Fourth Amendment claims, the first two requirements, an authoritative proffer and a timely assertion of Defendants' need for discovery, are plainly met.  First, Defendants' motion is accompanied by an affidavit executed by attorney David Lawless, Defendants' counsel of record (Dkt. No. 35-1).  Plaintiff's assertion that an affidavit from Mr. Lawless does not count is groundless (Dkt. No. 36 at 5, 7).[2]  The First Circuit has "stated unequivocally that a Rule

---

[2] Plaintiff appears to contend that Defendants had an obligation to contest his statement of material facts in connection with their Rule 56(d) motion, or that, because he supported his motion with documents provided by Defendants, Defendants are not entitled to discovery, notwithstanding that he disputes the truthfulness of the contents of these documents (Dkt. No. 36 at 2-5).  These contentions misperceive the nature and purpose of a Rule 56(d) motion, which is not to respond to the merits of the moving party's summary judgment motion.

56[(d)] proffer may acceptably take the form of 'written representations of counsel …'" *N. Bridge Assocs.*, 22 F.3d at 1204 (quoting *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 988 (1st Cir. 1988)), and, where, as here, the basis of the Rule 56(d) motion is that the nonmoving party has not had the opportunity to conduct discovery, an attorney who is knowledgeable about the status of discovery is an appropriate – and arguably the most appropriate – person to make the relevant representations.

> The affidavit is of record and has been duly served on the opposing party. It is signed by a person who possesses firsthand knowledge and who is competent to address the specifics of the matters discussed. The fact that the affiant is also the [Defendants'] attorney does not undermine the proffer; after all, the [Defendants] themselves would know the relevant particulars only through communications from counsel. Since they could hardly speak either to the cause or the effect of discovery delays, requiring that the supporting affidavit be signed by them rather than by an attorney would mindlessly exalt form over substance. Attorney [Lawless'] affidavit is, therefore, sufficiently authoritative.

*N. Bridge Assocs.*, 22 F.3d at 1204; *see also Angelo*, 2016 WL 126248, at *3 (noting that the nonmoving party's Rule 56(d) motion was supported by an attorney affidavit addressing the status of discovery); *Equal Emp't Opportunity Comm'n v. Texas Roadhouse, Inc.*, Civil Action No. 11-11732-DJC, 2014 WL 7448524, at *3 (D. Mass. Nov. 17, 2014) (same).

Second, Defendants' Rule 56(d) motion was timely: it was filed within 21 days of the date on which Plaintiff filed his first motion for partial summary judgment (Dkt. Nos. 31, 35). *See* L.R., D. Mass. 7.1(b)(2) (providing that oppositions to motions for summary judgment shall be filed within 21 days after the motion is served); *see also Angelo*, 2016 WL 126248, at *3 (holding that a Rule 56(d) motion filed by the plaintiff one month and four days after the defendants filed their motion for summary judgment was timely filed).

Defendants also easily satisfy their obligation to show cause why they did not conduct discovery earlier. As is apparent from the record and explained in the attorney affidavit,

Plaintiff's first motion for partial summary judgment was filed just a month after the court set the discovery schedule and some two weeks after Defendants received Plaintiff's amended initial disclosures.  "At the time [Plaintiff] filed [his] motion, no fact depositions had been taken, and the parties had yet to [serve] any interrogatories or document requests."  *Angelo*, 2016 WL 126248, at \*3.  *See* Dkt. No. 35-1 at 1-2, ¶¶ 4-7.  Accordingly, Defendants "ha[ve] shown good cause for [their] failure to discover the relevant facts earlier – the [Plaintiff] moved for [partial] summary judgment before [Defendants] had virtually any opportunity for discovery."  *Id.*  To the extent Plaintiff contends that Defendants had enough time and were obligated to conduct their investigation of the events of April 18, 2023, between that date and the date on which he filed his first motion for partial summary judgment (Dkt. No. 36 at 3), he apparently fails to appreciate the difference between an investigation conducted by an individual who has been sued, even when that individual is a police officer, and discovery conducted by an attorney in accordance with the provisions of Federal Rules of Civil Procedure 26-37.  Plaintiff's arguments do not undercut Defendants' persuasive showing of good cause for not having conducted discovery before Plaintiff filed his first motion for partial summary judgment.

"The remaining questions are whether the [D]efendants have met their burden with respect to the last two factors, namely, (a) that the specified facts exist, and (b) how those facts will influence the outcome of summary judgment."  *Texas Roadhouse*, 2014 WL 7448524, at \*3.  While Defendants' proffer on these points is not detailed, it is sufficient.  Plaintiff's motion for partial summary judgment on his Fourth Amendment claims is based on what he alleges occurred during his encounter with Burgess on April 18, 2023.  He claims that Antonellis filed a false report to the Town's police department "intended to cause the Plaintiffs' [sic] 'assault via police'" (Dkt. No. 36 at 2).  The apparent premise of Plaintiff's motion for partial summary

judgement is that Antonellis made a false report to Burgess; that Burgess knew or should have known that she lacked reasonable suspicion to detain and question Plaintiff about the report from Antonellis; and that Burgess and police officer Pelletier ("Pelletier") detained Plaintiff and used excessive force in their encounter with him on April 18, 2023.  Plaintiff acknowledges that "[t]he line between temporary detentions and de facto arrests is often blurred [and] that line can shift in the course of a single encounter so that what starts out as an investigatory stop may morph into a de facto arrest" (Dkt. No. 32 at 4) (citing *United States v. Lee*, 317 F.3d 26, 31 (1st Cir. 2003)). He characterizes the police reports about the encounter as "a smorgasbord of unreliable, contradictory and implausible allegations" (Dkt. No. 32 at 1), and relies on his own affidavit, which, in critical ways, is inconsistent with the contents of the police reports describing the details of the encounter, to support his motion for partial summary judgment (Dkt, No. 32 at 11-13).  As Defendants point out, they did not have an opportunity to depose Plaintiff about the events on April 18, 2023, or to take any other discovery, such as, for example, depositions of other individuals on site that day and employees of the engineering firm conducting the environmental assessment of the site of the proposed new library.  In these circumstances, Defendants have articulated "a plausible basis for believing that the undisclosed facts exist, can be obtained, and are material, which is all that is required."  *Angelo*, 2016 WL 126248, at *3 (citing *Mass. Sch of Law at Andover, Inc., v. Am. Bar Ass'n*, 142 F.3d 26, 44 (1st Cir. 1998)). Indeed, the posture of this case is similar to the posture in the *Angelo* case, where the defendants filed a motion for summary judgment before any discovery had been taken, relying on a declaration from one of the Coast Guard employees who was involved in the events that were the basis of the plaintiff's lawsuit.  The court stated that, "Plaintiff should have been given the opportunity to depose that individual and others involved in the [event] before having to oppose

the motion," and it denied the defendants' summary judgment motion while granting the

plaintiff's Rule 56(d) motion.  *Id.* at *3-4.

"[T]he threshold of materiality at this stage of a case [when no discovery has been taken]

is necessarily low."  *N. Bridge Assocs.*, 22. F.3d at 1207.  It is neither "necessary [n]or desirable

for a court to attempt to probe sophisticated issues on an undeveloped record.  If, at this stage of

the proceedings, a lack of materiality is not apparent, then an inquiring court should err, if at all,

on the side of liberality."  *Id.* at 1208 (citations omitted).  Indeed, it might be an abuse of

discretion for this court to rule on Plaintiff's first motion for partial summary judgment – at least

if the ruling were in Plaintiff's favor – when Defendants have had no opportunity to take

discovery.  *See In re PHC*, 762 F.3d at 145; *see also OSF HealthCare Sys.*, 933 F.3d at 865

(collecting decisions by circuit courts of appeals holding that a district court abused its discretion

by granting summary judgment where the nonmoving party was denied the opportunity to take

discovery on material issues).  Fairly applying these standards, Defendants' first Rule 56(d)

motion must be granted.

      B.     <u>Defendants' Second Rule 56(d) Motion</u>

For the reasons set forth above in connection with the analysis of Defendants' first Rule

56(d) motion, the first two requirements of Defendants' second Rule 56(d) motion relating to

Plaintiff's motion for summary judgment on his First Amendment retaliation claims, an

authoritative proffer and a timely assertion of Defendant's need for discovery, are undeniably

met.

Further, Defendants have satisfied their obligation to show cause why they have not taken

the discovery necessary to file a substantive opposition to Plaintiff's second motion for partial

summary judgment.  Plaintiff served his answers to Defendants' interrogatories and requests for

production of documents on February 23, 2024 (Dkt. No. 43-1 at 3 ¶ 8).  Plaintiff provided his

name and address in response to interrogatory number 1, and he informed Defendants that he had

never been convicted of any misdemeanor or felony or filed for bankruptcy (Dkt. No. 43-2 at 3,

8).  Otherwise, he provided no substantive information.  By way of example, Defendants'

interrogatory number 2 asked Plaintiff to:

> [i]dentify any and all witnesses to or persons having knowledge of the allegations
> contained in your Complaint, including the name and address of each person, the
> substance of the knowledge possessed by the person, whether that person
> provided a statement and/or affidavit, whether the statement was written or oral,
> the date that the statement and/or affidavit was provided, the name and address of
> the person to whom the statement and/or affidavit was provided.

(Dkt. No. 43-2 at 3).  In response to this standard interrogatory, which requested basic and

material information, Plaintiff stated:

> Plaintiff objects to the extent that Defendants' vague, over-broad and undefined
> interrogatories ask the Plaintiff to produce non-privileged documents readily
> accessible to or within the exclusive control of Municipal Defendants, deceptively
> withheld from the Plaintiff since May 2023.  Plaintiff has previously provided
> defendants all non-privileged documents in his possession, custody, or control
> that are relevant to his complaint, by and through his initial disclosures, his two
> motions [sic] Memorandums and Statements of Material Facts relevant to his
> Count I 1st Amendment claims (Docs. 38, 39).  Count II 4th Amendment claims
> (Docs. 32. 33).  Next week, Plaintiff will be filing a Motion, Memorandum and
> Statement of Material Facts relevant to his Count IV MCRA and Count V
> Intentional Infliction of Emotional Distress claims.

> Plaintiff objects to Defendants interrogatories on the grounds that they seek non-
> privileged and privileged information or documents that are not relevant to any
> party's claim or defense and exceeds the scope of permissible discovery pursuant
> to Federal Rule of Civil Procedure 26(b)(1) because it imposes a burden upon the
> plaintiff that is disproportionate to the needs of the case.

> Plaintiff further objects to the extent that Defendants' interrogatories are
> ostensibly presented for an improper purpose, with retaliatory animus, in violation
> of Rule 11, to create additional emotional/physical distress harm to the
> unrepresented Plaintiff and coerce his involuntarily [sic] withdrawal of his § 1983
> civil rights action.

(Dkt. No. 43-2 at 3-4).[3]

Defendant's interrogatory 3 requested information about potential expert witnesses, including expert medical witnesses, and asked that Plaintiff state the subject matter on which his expert was expected to testify, the substance of the facts and opinions to which the person was expected to testify, and a summary of the grounds of each opinion (Dkt. No. 43-2 at 4).   In response to Defendants' standard expert interrogatory, Plaintiff stated:

> Plaintiff objects to the extent that Defendants' vague, over-broad and undefined interrogatories ask the unrepresented Plaintiff to produce highly sensitive privileged medical documents, protected by statutory patient-health privileges, and other common-law, work-product, attorney-client and Rules of Civil Procedure privileges.
>
> Plaintiff further objects to Defendants' interrogatories to the extent that they seek information or documents which, if disclosed, would constitute an unwarranted invasion of Plaintiff's privacy.
>
> Plaintiff objects to Defendants interrogatories on the grounds that they seek non-privileged and privileged information or documents that are not relevant to any party's claim or defense and exceeds the scope of permissible discovery pursuant to Federal Rule of Civil Procedure 26(b)(1) because it imposes a burden upon the Plaintiff that is disproportionate to the needs of the case.
>
> Plaintiff objects to the extent that Plaintiff has conferred with Defense Counsel and will be filing a Motion, Memorandum and Statement of Material Facts relevant to his Count IV MCRA and Count V Intentional Infliction of Emotional Distress claims, to protect the unrepresented plaintiff from further annoyance, embarrassment, oppression, or undue burden or expense under Fed. R. Civ. P. 26(c)(1), and to mitigate Plaintiff's emotional and physical distress injuries caused by Municipal Defendants' never-ending retaliatory police/town investigation/harassment of him.

---

[3] Plaintiff's initial disclosures identified in excess of fifty individuals, not all of them by name. He failed to comply with the requirements in Fed. R. Civ. P. 26(a)(1)(A)(i) that he provide contact information for these individuals and the subject of the information possessed by them that he might use to support his claims (Dkt. No. 35-1 at 5-6).  Thus, Defendants cannot rely even in part on Plaintiff's initial disclosures as a substitute for their interrogatory requesting the identification of individuals having knowledge of the allegations in his complaint accompanied by a description of the substance of that knowledge.

Plaintiff further objects to the extent that Defendants' interrogatories are ostensibly presented for an improper purpose, with retaliatory animus, in violation of Rule 11, to create additional emotional/physical distress harm to the unrepresented Plaintiff and coerce his involuntarily [sic] withdrawal of his § 1983 civil rights action.

(Dkt. No. 43-2 at 4).  The remainder of Plaintiff's interrogatory responses were similarly uninformative (Dkt. No. 43-2).

Plaintiff objected, and produced no documents in response, to each of Defendants' document production requests, except that he responded that he had no other claim or lawsuit pending against any person or corporation in connection with the incidents alleged in the complaint (Dkt. No. 43-3).  His initial disclosures listed some 38 documents in his possession, describing their contents and providing their dates.  It does not appear that Plaintiff turned over copies of these documents when he served his initial disclosures.  Plaintiff seems to take the position that because he attached documents to his statements of material facts in support of his three motions for partial summary judgment, he has satisfied his discovery obligations with respect to the production of documents.  Plaintiff's responses to Defendants' written discovery requests were not in compliance with the rules.  *See Mulero-Abreu v. Puerto Rico Police Dep't*, 675 F.3d 88, 93 (1st Cir. 2012) (discussing the requirements for answering interrogatories and responding to document requests).  It is customary to await responses to written discovery before a party's deposition is taken.  *Cf. Cook v. Lynn & William, Inc.*, 344 F.R.D. 149, 155 (D. Mass. 2023) (noting that the plaintiff had been ordered to respond to outstanding discovery requests before taking further depositions).  As of the date of filing their second Rule 56(d) motion, Defendants had not taken Plaintiff's deposition (Dkt. No. 43-1 at 3, ¶ 12).

As to the third factor, given this brief and unproductive history, Defendants have satisfied their obligation to show cause why they did not conduct relevant discovery earlier.  Plaintiff has

refused to identify individuals who might have knowledge about the events that are the basis of

his First Amendment retaliation claim, refused to provide substantive answers to Defendants'

interrogatories 13-18, which were intended to obtain information concerning his First

Amendment retaliation claims, and, while he filed certain documents in connection with his

second motion for partial summary judgment, Defendants have no way of being sure that he has

produced all documents in his possession, custody, or control relevant to his First Amendment

retaliation claims (Dkt. No. 43-1 at 3, ¶¶ 9-10).  "[W]hen – as in this case – parties opposing

summary judgment make a timely showing in a Rule 56(d) proffer that there are important areas

of legitimate inquiry into which they have not had a full and fair opportunity to inquire, a district

court may commit an abuse of discretion by denying discovery into those areas."  *Emigrant*

*Residential LLC*, 37 F.4th at 727-28 (citing *In re PHC*, 762 F.3d at 145).

As to the materiality inquiry, Plaintiff alleges that he was retaliated against in violation of

his First Amendment rights for speech concerning dangers he believes exist associated with

building a new town library on the site identified for the project (Dkt. No. 38).  The law of First

Amendment retaliation claims is complex, particularly outside of the employment context, and

may depend on fine distinctions.  *See, e.g., Nieves v. Bartlett*, 587 U.S. 391, 398-402 (2019)

(discussing the elements of First Amendment claims generally, including the element of

causation outside of the employment context, and proof of causation in retaliatory arrest cases in

particular); *Grossman v. Martin*, 566 F. Supp. 3d 136, 144-45 (D.R.I. 2021) (discussing what

constitutes an adverse action for purposes of a First Amendment retaliation claim).  Further, the

First Circuit has said, as a general matter, that "[c]ourts have not been receptive to retaliation

claims arising out of government speech," *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013),

because "public officials have free speech rights [and] they also have an obligation to speak out

14

about matters of public concern." *Id.*  Plaintiff's First Amendment retaliation claims are based in part on statements he alleges were made to or about him by town officials.  He has also alleged that certain conduct by Defendants and others constituted adverse action, including police conduct during his April 18, 2023, encounter with Burgess and Pelletier.  The basis of his assertion that the speech and conduct about which he complains constitutes actionable adverse action attributable to Defendants is not clear, and some of these claims appear to be based on assumptions he has made, as, it appears, is his assertion that Defendants acted with retaliatory animus (Dkt. No. 38 at 13-16).  Plaintiff may have a well-founded First Amendment retaliation claim.  Defendants, however, are entitled to Plaintiff's answers to relevant interrogatories and responses to document requests, to take Plaintiff's deposition, and, possibly, to take discovery from other individuals before they respond to a motion for summary judgment on such a claim.

      C.    <u>Defendants' Third Rule 56(d) Motion</u>

For the reasons set forth above, Defendants satisfy the first three factors for obtaining relief under Rule 56(d) in response to Plaintiff's third motion for partial summary judgment at to his MCRA and intentional infliction of emotional distress claims.  The motion is supported by an authoritative affidavit and was timely filed, and Defendants have shown, in Plaintiff's non-responsive discovery responses, why they were not able to obtain discovery before Plaintiff filed his third motion for partial summary judgment.  The court turns, therefore, to whether Defendants have met their burden as to the last two factors, i.e., whether there are facts about which they need discovery and whether those facts are material.  *See, e.g., Texas Roadhouse*, 2014 WL 7448524, at *3.  The MCRA and intentional infliction of emotional distress claims are generally premised on the factual allegations on which Plaintiff relies to support his First Amendment retaliation and his Fourth and Fourteenth Amendment claims (Dkt. No. 41 at 5-17).

Where Defendants have sufficiently demonstrated that they are entitled to discovery related to Plaintiff's First Amendment retaliation and Fourth and Fourteenth Amendment claims before responding to motions for summary judgment, they are equally and for the same reasons entitled to discovery related to his MCRA and intentional infliction of emotional distress claims before they respond to a motion for summary judgment as to these claims.

Contrary to Plaintiff's contention, this is not a case in which the relevant discovery is in Defendants' exclusive possession (Dkt. No. 46 at 6). In addition to non-party witnesses who may have relevant information, as Defendants contend and Plaintiff acknowledges – at least implicitly by relying so heavily on events as recounted in his affidavits – his own "eye-witness" information is crucial to proof of his claims (Dkt. No. 46 at 6). Defendants, as they repeatedly contend, are entitled at the least to take Plaintiff's deposition before they respond to summary judgment motions that depend in significant part on his perceptions, memories, and interpretations of events he identifies as material to these claims.

"When Rule 56[(d)] functions properly, it ensures that, in the mine-run of cases, a litigant who fails to answer potentially relevant discovery requests on schedule will be unable to demand summary judgment until after he remedies his failure." *N. Bridge Assocs.*, 22 F.3d at 1208 (citations omitted). This is such a case. Plaintiff filed his first motion for partial summary judgment before any discovery had taken place, and he filed his second and third motions for partial summary judgment without providing substantive information to Defendants in response to their discovery requests. Plaintiff's motions for partial summary judgment "rel[y] on [his] version of [events], but [Defendants are] entitled to pursue information that may challenge that version of events." *Angelo*, 2016 WL 126248, at *3. "Where, as here, additional discovery under Rule 56(d) is warranted, the entry of summary judgment is inappropriate as to claims that

may be affected by the fruits of requested discovery." *Emigrant Residential LLC*, 37 F.4th at

728 (citing *N. Bridge Assocs.*, 22 F.3d at 1208-09).

     D.    <u>Plaintiff's Motion for a Court Order to Deny Defendants' Rule 56(d) Motions</u>

     Plaintiff's motion for a court order denying Defendants' Rule 56(d) motion is based

principally on his claim that Defendants have committed a fraud on the court.  Citing *Aoude v.*

*Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989), and the cases cited therein, Plaintiff contends

that the court should deny Defendants' three Rule 56(d) motions because, according to him,

Defendants have committed a fraud on the court by failing to produce certain information to him

in response to his written discovery requests.

     "[T]he phrase 'fraud on the court' has a special, well-understood and limited office. ….

'[F]raud on the court' is limited to fraud that '"seriously" affects the integrity of the normal

process of adjudication,' 'defile[s] the court itself,' and prevents 'the judicial machinery' from

performing its usual function – for example, bribery of a judge or jury tampering." *Torres v.*

*Bella Vista Hosp., Inc.*, 914 F.3d 15, 19 (1st Cir. 2019) (fourth alteration in original) (quoting 12

MOORE'S FEDERAL PRACTICE § 60.12[4][a] (2018); citing *Geo. P. Reintjes Co. v. Riley Stoker*

*Corp.*, 71 F.3d 44, 48 n.5 (1st Cir. 1995)).  Perjury alone, absent allegations of misconduct by an

officer of the court, is not sufficient to constitute fraud on the court, *id.* at 20 (quoting *Geo. P.*

*Reintjes Co.*, 71 F.3d at 49), and "failure to disclose documents during pretrial discovery does

not necessarily amount to fraud on the court." *Glenwood Farms, Inc. v. O'Connor*, 666 F. Supp.

2d 154, 178 (D. Me. 2009) (citing *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 393-96 (1st

Cir. 1990) (affirming the district court's finding that a party's failure to disclose a relevant report

on pollution during discovery did not "sink to the level of fraud on the court")).  "Importantly,

determinations of fraud upon the court must be reserved for 'very unusual cases involving "far

more than an injury to a single litigant."'" *Id.* (quoting 11 C.A. Wright, A.R. Miller, & M.K. Kane, FEDERAL PRACTICE & PROCEDURE § 2870, at 415 (2d ed. 1995)).  A charge of fraud on the court "'"must be supported by clear, unequivocal and convincing evidence."'" *Id*. at 177-78 (quoting *United States v. Yeje-Cabrera*, 430 F.3d 1, 29 n.22 (1st Cir. 2005)).

Plaintiff's motion does not clearly explain what discovery he claims Defendants withheld, but it appears that he is complaining that Defendants failed to produce documents that the Chair of the Town's Conservation Commission provided in response to a public records request initiated by Burgess through the Town Clerk (Dkt. No. 59 at 4), and, if the court understands correctly, other documents related to then-Conservation Chair Miriam Defant that show that he and others were the subject of a criminal investigation (Dkt. No. 59 at 2; Dkt. No. 44-3).  Defendants, who, through counsel, have had direct communications with Plaintiff about discovery and may have a better understanding of Plaintiff's claims than does the court, represent that Plaintiff is complaining about Defendants' alleged failure to produce documents that the Town sent to a non-party in December 2023 in response to a public records request and documents concerning Plaintiff's public records request related to his demand that Burgess investigate Antonellis for making a false police report (Dkt. No. 62 at 2).  Defendants represent that they have supplemented their document production responses to Plaintiff, including producing the documents related to two public records requests, and remain willing to provide reasonable supplementation in response to any reasonable request for identifiable documents (Dkt. No. 62 at 3).

Plaintiff has not presented clear, unequivocal, and convincing evidence of fraud on the court nor has he alleged more than an injury to a single litigant.  As an initial matter, while Plaintiff appears persuaded that the evidence he claims Defendants withheld is relevant to his

complaint, the factual allegations in his complaint concern events in 2021, April of 2022, and the early months in 2023, culminating in his confrontation with Burgess and Pelletier on April 18, 2023, and communications immediately after the confrontation (Compl. ¶¶ 11-76). The latest event alleged in the complaint is his speculation, alleged in the form of reason to believe, that Burgess and Antonellis searched for Criminal Offender Record Information related to Plaintiff on or around July 21, 2023 (Compl. ¶ 14). Defendants represent that the documents at issue post-date the events alleged in Plaintiff's complaint and are not relevant to the claims stated in the complaint (Dkt. No. 62 at 2). Plaintiff has not presented clear, unequivocal, and convincing evidence that Defendants deliberately conspired to hide documents from him, particularly where it appears that non-parties had or obtained those documents. Of equal importance, Plaintiff has argued emphatically that he had sufficient evidence, by way of his affidavits, documents in his possession, and documents turned over to him by Defendants, that the court could determine that there was no material fact in dispute as to each of his motions for partial summary judgment (e.g., Dkt. No. 36 at 2; Dkt. No. 44 at 5-6; Dkt. No. 46 at 6). Thus, it appears that the documents Plaintiff claims that Defendants did not initially produce were not so central to his case that he could not proceed without them.

Second, it is still relatively early in this litigation, and it appears from the submissions before the court that Defendants have now produced the documents Plaintiff claims they withheld. Plaintiff, who initially obtained at least some of the documents from non-party sources, has not been deprived of the information in the documents.

Third, Defendants have not responded substantively to Plaintiff's three motions for partial summary judgment, so they have not made any substantive submissions to the court addressing the facts that are the basis of Plaintiff's claims. It follows that Plaintiff has not shown

that Defendants have made any filings with this court that were intended to mislead the court about the existence or contents of these documents.  Plaintiff has alleged a discovery dispute with Defendants.  He himself did not provide timely and complete discovery responses to Defendants interrogatories and document production requests.

Plaintiff has not shown, by clear and convincing evidence, that Defendants have engaged in misconduct that approaches perjury, bribery of a judge, or submission to the court of fabricated or altered evidence.  *See Aoude*, 892 F.2d at 1122 (affirming dismissal of the plaintiff's case as a sanction for fraud on the court where the plaintiff's entire case was based on a falsified, backdated document).  In summary, he has not shown that the court should deny Defendants' Rule 56(d) motions based on such speculative – and hyperbolic – claims of fraud on the court.

To the extent Plaintiff argues that the court should deny Defendants' three Rule 56(d) motions and grant his three motions for partial summary judgment based on this court's decisions in *Greenberg v. PATHS Program Holding, LLC (AZ)*, Case No. 3:19-cv-30032-MGM, 2024 WL 1659737 (D. Mass. Apr. 17, 2024), and *Brown v. Wheatleigh Corp.*, Civil No. 3:18-cv-30056-KAR, 2021 WL 4079779 (D. Mass. Sept. 8, 2021), he is wrong.  Neither of these cases supports denying Defendants Rule 56(d) motions in the circumstances present in this case.

The *Greenberg* case was filed in March 2019.  After completion of non-expert and expert discovery, a process that took some three years, the parties filed cross-motions for partial summary judgment in Fall 2023.  Then, after discovery was complete and partial dispositive motions filed by the plaintiff and the defendants were fully briefed, the defendants filed a motion requesting that the court stay its ruling on the parties' cross-motions for partial summary judgment and authorize the defendants to take discovery related to an e-mail exchange that the

plaintiff was relying on to support his opposition to defendants' motion for partial summary judgment. The plaintiff had not produced the email exchange. The court held that, while this single document was relevant to the plaintiff's claims and should have been produced, the plaintiff was relying on it for a limited purpose, and the defendants had had a full and fair opportunity to take discovery or otherwise obtain information concerning the subject matter addressed in the email exchange. *See Greenberg*, 2024 WL 1659737, at *3. The court's decision in *Greenberg* in no way supports Plaintiff's position in this case, where Defendants have persuasively demonstrated that they have not a full and fair opportunity to conduct discovery on any of Plaintiff's claims.

Plaintiff's reliance on *Wheatleigh* is similarly unavailing. Discovery in the *Wheatleigh* case opened in October 2018, and, where this was one of a group of related cases, lasted for some two years. The parties filed dispositive motions on various dates in late 2020. There was no question that all parties had a full and fair opportunity to conduct discovery before dispositive motions were filed and no party suggested otherwise. For this reason alone, the *Wheatleigh* decision provides no support for Plaintiff's position that Defendants are not entitled to discovery before they respond to his pending dispositive motions. To the extent *Wheatleigh* is relevant to this case – and any relevance is extremely limited if it exists at all – the court rejected the *Wheatleigh* defendants' position that the plaintiff was not entitled to file a limited motion for summary judgment seeking a ruling that, based on undisputed facts, a particular defense applicable to some wage and hour claims did not apply to his claims. *See Wheatleigh*, 2021 WL 4079779, at *3. This decision in *Wheatleigh* has no relevance or application to Defendants' Rule 56(d) motions, in which Defendants have demonstrated that Plaintiff's three motions for partial

summary judgment were filed before Defendants had a full and fair opportunity to conduct discovery.[4]

Plaintiff's complaint that he is being "denied fair procedure by which he can ascertain which claims put forth by his partial summary judgment motions prevail as a matter of law and which material facts are disputed and which are not" (Dkt. No. 59 at 11), is based on a misapprehension about the court's role in ruling on a motion for summary judgment.  A court cannot discern which facts are in dispute in connection with a summary judgment motion when a party opposing summary judgment has not had a full and fair opportunity to conduct discovery and put its competing contentions about the facts before the court.  Because Plaintiff is self-represented, he is entitled to a liberal reading of his complaint and, perhaps, some leeway in complying with complex procedural requirements, but he is not entitled to deny Defendants meaningful discovery, then demand that the court issue substantive rulings on his motions for summary judgment based solely on his factual and legal contentions.  *See Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994) (stating that the right of self-representation is not a license not to comply with relevant rules of procedural and substantive law) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 140 (1st Cir. 1985), *cert. denied*, 476 U.S. 1172 (1986)).

---

[4] Of note, in *Wheatleigh*, this court denied the defendants' motion to dismiss the case based on alleged fraud on the court, ruling that the plaintiff's admitted misstatements were not "lies that could themselves 'generate an unfair resolution of the case,'" *Wheatleigh*, 2021 WL 4079779, at *2 (quoting *Starski v. Kirzhnev*, Civil Action No. 06-10157-DPW, 2011 WL 923499, at *10 (D. Mass. Mar. 15, 2011)), and that the defendants had not shown that the plaintiff's failure to produce certain documents in discovery was deliberate.  *Id.*

V.      <u>Conclusion</u>

For the foregoing reasons, Defendants' three Rule 56(d) motions (Dkt. Nos. 35, 43, and 45) are GRANTED.  Plaintiff's motion for a court ruling denying Defendants' Rule 56(d) motions is DENIED.

It is so ordered.

Dated: July 24, 2024                    <u>Katherine A. Robertson</u>
                                        KATHERINE A. ROBERTSON
                                        U.S. Magistrate Judge