UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL HOOTSTEIN,<br>      Plaintiff<br><br>v.<br><br>TOWN OF SHUTESBURY, POLICE<br>CHIEF KRISTIN BURGESS & MARY<br>ANNE ANTONELLIS, in their<br>individual and official capacities,<br>      Defendants. | Civil Case No. 3:23-30057-KAR |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT & DEFENDANTS' MOTION TO STRIKE**
(Dkt. Nos. 94 & 109)

**I.    Introduction**

Self-represented plaintiff Michael Hootstein ("Plaintiff") asserts claims pursuant to 42 U.S.C. § 1983 of retaliation for the exercise of his First Amendment rights (Count I), violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution (Count II) and *Monell* liability against the Town of Shutesbury (Count III); a claim pursuant to the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I (Count IV); a claim for intentional infliction of emotional distress (Count V); and a free-standing claim for punitive damages (Count VI). The defendants are the Town of Shutesbury (the "Town" or "Shutesbury"), its police chief, Kristin Burgess ("Burgess" or "Chief Burgess"), and its library director, Mary Anne Antonellis ("Antonellis") (collectively, "Defendants"). The parties consented to this court's jurisdiction for all purposes through trial (Dkt. No. 14). *See* Fed. R. Civ. P. 73(b); 28 U.S.C. § 636(c).

Presently, both sides have moved for summary judgment. This decision resolves only Plaintiff's motion (Dkt. No. 94), as well as Defendants' related motion to strike portions of

1

Plaintiff's Local Rule 56.1 statement of material facts (Dkt. No. 109), which Defendants argue improperly sets out legal arguments, opinions, conclusions, speculation, and characterizations; includes factual assertions not based on personal knowledge; relies on inadmissible hearsay; and includes assertions that are irrelevant and immaterial or are not supported by the cited materials. Defendants' contentions concerning widespread flaws in Plaintiff's statement of material facts are well-taken. In these circumstances, a court is not required to "individually explain why each of [Plaintiff's statements] were deficient." *Quintana-Dieppa v. Dep't of Army*, 130 F.4th 1, 11 (1st Cir. 2025). In reaching its decision, the court has relied only on properly supported factual assertions, disregarding facts that are not properly supported, averments that are not made on personal knowledge, facts that would not be admissible in evidence, and arguments attempted to be disguised as facts. *See* Fed. R. Civ. P. 56(c). Accordingly, Defendants' motion to strike Plaintiff's statement of facts is GRANTED in part to the extent the court has proceeded on this basis.[1] For reasons set forth below, Plaintiff's motion for summary judgment is DENIED.

**II.    Legal Standard**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' when a rational factfinder could resolve it either direction." *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018) (citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)). "A fact is

---

[1] The court declines Plaintiff's request that it deem his statement of facts admitted pursuant to Local Rule 56.1 (Dkt. No. 118). Contrary to Plaintiff's argument, Defendants' opposing statement of facts complies with the rule.

2

'material' when its (non)existence could change a case's outcome. *Id*. (citing *Borges*, 605 F.3d at 5).

A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325). If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor. *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)).

III.    **Facts**[2]

Plaintiff, a resident of Shutesbury since 1999, is a practicing hydrogeologist with a long professional history dedicated to the protection of drinking water and human health (PF ¶¶ 1-2). By at least 2012, Plaintiff had developed concerns about drinking water aquifers and protected Massachusetts wetlands associated with the Town's plan to build a new public library on a plot known as Lot O-32 (PF ¶ 4).

---

[2] Plaintiff's facts as set forth in Dkt. No. 96 are referred to as "PF ¶ _," and Defendants' responses as set forth in Dkt. No. 108 are referred to as "DR ¶ _."

On April 21, 2021, Plaintiff sent an email to the Town Board of Health ("BOH") and the Town Administrator Becky Torres requesting data underlying a map, which he characterized as identifying his neighborhood and the firehouse neighborhood as "suspected pfas [polyfluoroalkyl substances] hotspot areas" (PF ¶ 17; Dkt. No. 96-9).  BOH member Al Werner, upon learning of Plaintiff's inquiry about the PFAS testing, emailed "Arleen" and "Cat" saying, "you are [Plaintiff's] current lighting rod for all that he thinks unfair in the world…. [Plaintiff] is clearly not well and I'm sorry you are the focus of his rage" (PF ¶ 18; Dkt. No. 96-10).  Plaintiff responded by sending an email to Werner, copying the Town Administrator and Board of Health, asserting that Werner's email was "hurtful, unprofessional, hostile, and defamatory," and that his "attempt to silence [Plaintiff] was unacceptable;" Plaintiff requested an "immediate apology" from Werner and indicated that his email should be considered a "formal complaint" against Werner (PF ¶ 19; Dkt. No. 96-11).  Werner later apologized to Plaintiff, indicating that it was "insensitive" of him to have suggested Plaintiff was "not well," but asking Plaintiff to treat the BOH and its members with "the respect and consideration they deserve" (PF ¶ 22; Dkt. No. 96-10).  On April 26, 2021, Plaintiff filed an Open Meeting Law complaint against the BOH with the Office of the Attorney General, Division of Open Government, which resulted in a finding that the BOH violated the Open Meeting Law in only one of the instances about which Plaintiff complained via an April 22, 2021, email (PF ¶ 23; Dkt. No. 96-15).

On June 6, 2022, Antonellis went to Chief Burgess to express "concern" regarding Plaintiff, who, she reported, was "making lots [of] phone calls and [was] unhappy with the idea of the new library," and was getting "very loud and angry" (PF ¶ 26; DR ¶ 26).  Plaintiff considered the proposed construction of the library on Lot O-32 to be a danger to public health based on contamination at the site.  While Plaintiff characterizes Antonellis's June 6, 2022,

report as "frivolous," Antonellis avers that she found conversations with him to be "threatening and was concerned that they could escalate into something more serious" (PF ¶ 26; DR ¶ 26).

The following day, Plaintiff filed a complaint against the Town related to Lot O-32 with the Shutesbury Conservation Commission ("the Conservation Commission"), and another with the Massachusetts Department of Environmental Protection ("DEP") on June 23, 2022 (PF ¶¶ 27-28). The Conservation Commission put Plaintiff's complaint on the agenda for its July 28, 2022, meeting, and Plaintiff notified the chair that he was concerned he might become a target for personal attacks in the public meeting (PF ¶¶ 29-30). On August 12, 2022, the Conservation Commission issued an Enforcement Order against Shutesbury relating to its findings that the Town had taken actions with respect to Lot O-32 that violated the Wetlands Protection Act and its regulations (Dkt. 96-25). Thereafter, on August 23, 2022, Plaintiff filed another complaint against the Town related to Lot O-32 with the DEP, and on September 14, 2022, with the Conservation Commission (PF ¶¶ 37-38).

On November 18, 2022, Plaintiff drove to Lot O-32 to observe a DEP official overseeing the investigation and testing for contaminants by the Town's environmental consultants, Fuss & O'Neill (PF ¶¶ 40-41). Antonellis was also at the property, and the parties dispute many details of Plaintiff's demeanor and the helpfulness or hindrance of his presence on the site that day (PF ¶¶ 43- 47; DR ¶ 43-47). The parties do agree that Antonellis told Plaintiff to stay out of the work zone because she felt his presence created a liability issue (PF ¶ 43). However, part-time Police Officer Nathaniel Masse told Antonellis that there were no grounds for keeping Plaintiff out of the work site notwithstanding her explanation of the potential liability implications for the Town (PF ¶ 43). Later that day, Plaintiff filed a complaint against Antonellis with Chief Burgess, but, according to Burgess, Plaintiff refused to provide her with a copy of a recording he had made of

the events that day (PF ¶¶ 48-49; DR ¶ 48-49).  On November 22, 2022, the Town Select Board met and, among other topics, discussed adopting a work zone policy following the November 18, 2022, occurrence at Lot O-32 (PF ¶¶ 54-62; DR ¶ 54-62).

      Plaintiff filed a nuisance complaint against the Town related to Lot O-32 on April 12, 2023, with the Shutesbury Board of Health (PF ¶¶ 66).  The parties dispute whether Chief Burgess and Antonellis knew of Plaintiff's nuisance complaint six days later, when Plaintiff went to Lot O-32 while a Fuss & O'Neill employee was on-site (PF ¶¶ 67-68; DR ¶ 67-68).  For purposes of this motion, the court accepts, as it must, the properly supported statements that neither Antonellis nor Burgess were aware of the complaint as of April 18, 2022.  On that day, Plaintiff spoke with the employee, Clifford Otis, about the installation of new observation wells and walked into the Lot O-32 woods to take pictures of them (PF ¶¶ 70-72).  While it is undisputed that Otis called Fuss & O'Neill supervisor Timothy Clinton to report his interaction with Plaintiff and that Clinton in turn called Antonellis, the parties dispute the content of the latter communication (PF ¶ 74; DR ¶ 74).  Defendants in particular maintain that Clinton told Antonellis that residents were at the lot "harassing" the engineer and that Clinton did not say – and Antonellis did not know – that Plaintiff was the resident on-site (DR ¶¶ 74, 114).  After talking to Clinton, Antonellis called Chief Burgess and told her that a Fuss & O'Neill supervisor had reported to her that residents were at Lot O-32 "harassing" a worker (DR ¶ 75).

      Following Antonellis's call, Chief Burgess and Officer Devon Pelletier responded to Lot O-32  Both forgot to retrieve their body cameras off their chargers before doing so (PF ¶¶ 76, 78).  The parties agree that Burgess and Pelletier encountered Plaintiff at the site, but many details of the encounter are disputed (PF ¶ 81).  Both sides agree that Burgess attempted to start a conversation with Plaintiff about what happened with the Fuss & O'Neill worker, to which

6

Plaintiff responded that he was walking back to his car (PF ¶¶ 81, 83, 85). Burgess and Pelletier blocked Plaintiff's path while Burgess explained that they were investigating a complaint of harassment and needed to speak to him to determine what had happened (PF ¶¶ 81, 85). When Burgess asked Plaintiff if they could walk toward the site, Plaintiff responded, "[n]o you cannot drag me into the woods" (PF ¶ 81). Plaintiff endeavored to push past Burgess, using his hands to try to move her, kicking her shin, and trying to move her arm (DR ¶ 81). In his deposition, Plaintiff referred to Burgess's attribution of these actions to him as "boldfaced lie[s,]" other than the attempt to move her arm, which he testified there was "some evidence of;" he admitted to "remov[ing] her arm" when she put him in a "shoulder hold" (Dkt. No. 108-2 at 5). According to Burgess, while she could have arrested Plaintiff for assaulting a police officer, she did not do so because she believed that his irrational behavior could be an indicator of mental health concerns (DR ¶ 81). Burgess states, based on her personal observations, that Plaintiff was yelling, seemed angry, and was aggressive with his tone and body language (DR ¶ 86). Antonellis also describes Plaintiff as yelling belligerently (DR ¶ 105). Burgess recounts Plaintiff stepping closer to her multiple times with his hands in her face, leading her to take a step back each time (DR ¶ 86). At one point, Burgess became concerned that Plaintiff was going to strike her in the face, and she and Officer Pelletier placed Plaintiff's hands behind his back and cuffed him (DR ¶¶ 86-87). The parties agree that Plaintiff dropped to his knees upon being cuffed and that when Chief Burgess attempted to help him up, he yelled, "[j]ust drag me into the woods and do God knows what with me …what are you going to do beat me Officer?" (PF ¶ 86). While Plaintiff does not agree, Burgess and Antonellis describe Burgess as calm and professional during her encounter with Plaintiff (PF ¶ 89; DR ¶ 89).

It is undisputed that Officer Pelletier went to speak to Otis at the work site once Plaintiff was in handcuffs (PF ¶ 43). After Pelletier moved away, Chief Burgess asked Plaintiff if he could remain calm so that she could take the restraints off, and when Plaintiff answered affirmatively, Burgess removed the cuffs (PF ¶ 43). Plaintiff remained talking with Burgess calmly as they waited for Pelletier to return (PF ¶ 43). After speaking with Otis, Pelletier reported back to Burgess that Otis had denied being threatened by Plaintiff, whereupon Burgess told Plaintiff that he was free to leave (PF ¶¶ 100-101). Approximately 30 minutes after Burgess arrived back at the police station, Plaintiff called saying he wanted to file charges against Antonellis for "assault via the police" (PF ¶ 107). Plaintiff also called the State Police Barracks and asked them to assist Burgess in the investigation (PF ¶¶ 108, 111).

IV.   Discussion

    A.  First Amendment Retaliation Claim Against All Defendants

Plaintiff's first claim is that Defendants unlawfully retaliated against him in violation of the First Amendment because he spoke out critically against the Town in connection with its plan to build the new public library on the Lot O-32 site, which he viewed as posing a danger to public health. "The First Amendment guarantees the 'public interest in having free and unhindered debate on matters of public importance.'" *Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 66 (1st Cir. 2015) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968)). The government may not "impos[e] burdens on persons that discourage or punish them from exercising protected constitutional rights." *Id.* (citing *Ramírez v. Arlequín*, 447 F.3d 19, 22 (1st Cir. 2006)). "[T]o establish a prima facie case of First Amendment retaliation, [Plaintiff] must prove that 1) '[he] engaged in First Amendment-protected conduct,' 2) '[he] suffered an adverse action,' and 3) '[his] protected conduct played a "substantial or motivating" part in the

adverse action.'" *President & Fellows of Harvard Coll. v. United States Dep't of Health & Human Servs.*, No. 25-CV-10910-ADB, 2025 WL 2528380, at *22 (D. Mass. Sept. 3, 2025) (quoting *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 37 n.4 (1st Cir. 2024)).  If Plaintiff makes the required showing, Defendants "'may then avoid a finding of liability by showing that "[they] would have reached the same decision … even in the absence of the protected conduct."'" *Id*. (alteration in original) (quoting *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012)).

In resisting Plaintiff's motion for summary judgment, Defendants challenge the second and third elements of Plaintiff's prima facie case.  Plaintiff's memorandum does not clearly identify the actions that he maintains were adverse.  However, the court need only address the third element – causation – to determine that Plaintiff is not entitled to summary judgment on his First Amendment retaliation claim.  To establish causation, Plaintiff must introduce enough evidence to support a finding that the protected conduct – here, Plaintiff's speech against the Town's plan to build the public library on Lot O-32 – "was a substantial motivating factor behind" the adverse action.  *McGunigle v. City of Quincy*, 835 F.3d 192, 202 (1st Cir. 2016).  "'It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must <u>cause</u> the injury.'"  *Salmon v. Lang*, 57 F.4th 296, 312 (1st Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)).  "That is, 'it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'"  *Id*. (quoting *Nieves*, 587 U.S. at 399).

While Plaintiff baldly claims that Defendants had retaliatory animus toward him due to his speaking out unfavorably about Lot O-32 and that this was the but-for cause for adverse actions, the only evidence he relies on to establish causality is the temporal proximity between

his April 12, 2023, nuisance complaint against the Town and the April 18, 2023, handcuffing incident at Lot O-32[3] (Dkt. Nos. 95; 108-2 at 6; 118).  Plaintiff cannot prevail at summary judgment on this basis because there is a genuine dispute as to whether either Chief Burgess or Antonellis was aware of Plaintiff's nuisance complaint when the incident took place on April 18, 2023.  There is also a dispute as to whether Antonellis knew it was Plaintiff who was at the site when she made the call to Burgess about residents harassing the Fuss & O'Neill employee.  Hence, Defendant is not entitled to judgment as a matter of law on Count I of his complaint.[4]

    B. <u>Fourth Amendment Unlawful Seizure and Excessive Force Claim Against Burgess and Antonellis</u>

In the second count of his complaint, Plaintiff claims that Chief Burgess and Antonellis unreasonably seized him and used excessive force against him in violation of his Fourth Amendment rights on April 18, 2023.  Plaintiff is not entitled to judgment against Antonellis in the complete absence of evidence that the library director played any role in seizing or using force against Plaintiff.[5]  As to Chief Burgess, the court turns first to the question of the reasonableness of the seizure.  Brief investigatory stops by law enforcement that fall short of traditional arrest pass muster under the Fourth Amendment when "officers … have 'a reasonable suspicion supported by articulable facts that criminal activity "may be afoot."'"  *United States v.*

---

[3] To the extent Plaintiff argues that Antonellis's June 6, 2022, report to Chief Burgess establishes discriminatory animus as a matter of law, it fails where Antonellis asserts that she found the tenor of Plaintiff's calls to be threatening and indicated she was fearful of escalation.
[4] In addition, to the extent Plaintiff claims that he was retaliatorily seized on April 18, 2023, in violation of his First Amendment rights, he also must prove the absence of probable cause. *See Velez v. Eutzy*, No. 24-1594, 2025 WL 2650475, at *4 (1st Cir. Sept. 16, 2025) (citing *Nieves*, 587 U.S. at 402 ("[A] plaintiff pressing a retaliatory arrest claim must [also] plead and prove the absence of probable cause for the arrest.")).  As is discussed *infra*, the summary judgment record does not establish a lack of probable cause as a matter of law.
[5] Plaintiff's reference to Antonellis as a "de facto" police officer is supported neither factually nor by citation to legal authority and carries no weight (Dkt. No. 118 at 21).

*Langston*, 110 F.4th 408, 421 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 581 (2024) (quoting *United States v. Tiru-Plaza*, 766 F.3d 111, 115 (1st Cir. 2014)).  "'[T]he relevant inquiry is an objective one based on all "the cumulative information available to [the officers]" at the time of the search [or stop].'"  *Id*. at 422 (alterations in original) (quoting *United States v. Qin*, 57 F.4th 343, 349 n.7 (1st Cir. 2023)).  In turn, "[a]n officer has probable cause to arrest when the 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  *Velez*, 2025 WL 2650475, at *2 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  The probable cause standard is also objective and based on the information known to the officer at the time.  *Id*.

Plaintiff claims that Chief Burgess failed to establish either reasonable suspicion or probable cause before detaining him.  Defendants argue that Plaintiff was not seized until he was handcuffed because he did not submit to Chief Burgess's show of authority and that when Burgess handcuffed Plaintiff, she had probable cause to believe he had committed the crime of assault and battery on a police officer and was going to do so again.  Alternatively, Defendants argue that Chief Burgess's stop of Plaintiff was justified as an investigatory stop by Antonellis's call relaying the report to her by a Fuss & O'Neill supervisor that residents were harassing a worker on-site, combined with Plaintiff's agitated and irrational behavior when Chief Burgess and Officer Pelletier arrived on-site.  Further, Defendants maintain that the scope of the stop and temporary use of handcuffs on Plaintiff were both reasonable.

Plaintiff is not entitled to summary judgment on this disputed record.  "'Under the Fourth Amendment, a seizure occurs when a police officer, by means of physical force or a show of authority, has in some way restrained the liberty of a citizen.'"  *United States v. Holloway*, 499

11

F.3d 114, 117 (1st Cir. 2007) (quoting *United States v. Sealey*, 30 F.3d 7, 7 (1st Cir. 1994)). Additionally, "a seizure requires that the citizen must actually submit to the show of authority." *Id*. (citing *California v. Hodari D.*, 499 U.S 621, 626-629 (1991); *United States v. Smith*, 423 F.3d 25, 28-29 (1st Cir. 2005)). Thus, given Defendants' version of events, the court cannot conclude as a matter of law that Plaintiff was seized within the meaning of the Fourth Amendment before Chief Burgess and Officer Pelletier used force, i.e. handcuffs, to restrain him. According to Defendants, Plaintiff did not submit to the police show of authority upon their arrival at Lot O-32. Instead, when Burgess told Plaintiff that she needed to speak with him regarding an investigation, Plaintiff behaved belligerently and attempted to push past her, using his hands to try to move her, kicking her shin, and trying to move her arm. These actions do not evince submission to a show of authority. In turn, by the time Burgess and Pelletier did seize Plaintiff by placing him in handcuffs, on Defendants' version of events, the officers reasonably believed Plaintiff had committed the crime of assault and battery on a police officer in their presence and was poised to do so again. Thus, their seizure of Plaintiff would be justified by probable cause and would not represent a violation of Plaintiff's Fourth Amendment rights.

      Plaintiff argues that Chief Burgess's affidavit (Dkt. 108-4) submitted in opposition to his motion for summary judgment should be disregarded under the sham affidavit rule (Dkt. No. 118 at 6-12). Pursuant to the so-called "sham affidavit" rule, "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994). "A subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a

motion for summary judgment." *Id.* (quoting *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 26 (1st Cir. 2002)). Here the record does not contain deposition testimony from Burgess that Plaintiff claims is contradictory to her affidavit. Rather, Plaintiff argues that Burgess's affidavit is contradictory to her previous interrogatory answers. The sham affidavit rule may be applied "to a party's sworn responses in discovery or its verified pleading averments." *Power v. Connectweb Techs, Inc.*, 740 F. Supp. 3d 63, 68 (D. Mass. 2024). However, Plaintiff has not shown that Burgess's statements in her affidavit contradict her interrogatory answers. Burgess explicitly incorporated her police report, which she prepared on April 20, 2023, and modified on May 23, 2023, at or around the time Plaintiff served his complaint, by reference into her interrogatory answer, and it is wholly consistent with her affidavit (Dkt. Nos. 108-6 at 8-11; No. 96-37; 118 at 8). Thus, this is the opposite of a case in which a party previously gave clear answers to unambiguous questions posed in discovery, then, faced with a summary judgment motion, seeks to "'inexplicably alter the factual landscape to which they had previously contributed in order to manufacture a genuine dispute as to a material fact ….'" *Power*, 740 F. Supp. 3d at 68 (quoting *Velez v. United Parcel Serv., Inc.*, 728 F. Supp. 3d 228, 233 (D. Mass. 2024)). Burgess's account of her April 18, 2022, encounter with Plaintiff has been consistent throughout this litigation. As such, there is no basis for disregarding Burgess's affidavit.

  Moving on, Plaintiff also claims that Chief Burgess used excessive force in detaining him. To determine whether force used is constitutionally permissible, the court first "must ascertain the relevant facts and circumstances," and second "must determine whether, given those facts, the force used was 'objectively reasonable.'" *Velez*, 2025 WL 2650475, at *3 (citing and quoting *Scott v. Harris*, 550 U.S. 372, 378 & 381 (2025)). The excessive force inquiry presents a question of law, *id.* (citing *Scott*, 550 U.S. at 381 n.8), based on a consideration of "the

totality of the circumstances." *Id*. (quoting *Gray v. Cummings*, 917 F.3d 1, 8 (1st Cir. 2019)). The law recognizes that reasonable force can be used "merely to detain." *Id*. (citing *United States v. Coplin*, 463 F.3d 96, 102 (1st Cir. 2006)).  Here, viewing the record in the light most favorable to Defendants, the non-moving parties, Plaintiff was belligerent, placed his hands on Chief Burgess's person and kicker her in an effort to move past her, and repeatedly moved toward her with his hands in her face.  Further, Burgess removed the handcuffs as soon as Plaintiff agreed to remain calm.  Plaintiff has not shown that Burgess's cuffing of him deviated from standard police practice, or that it was unreasonable under the circumstances, as recounted by Burgess, Antonellis, and Pelletier, who are all consistent in representing that Plaintiff was noncompliant, belligerent, and physically threatening. *Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312, 327 (1st Cir. 2015) (affirming the grant to summary judgment in favor of the defendant officer where the record as put forth by the plaintiff showed that in the course of arresting her for obstructing a police investigation and/or disorderly conduct, the officer pushed her face first against a wall and cuffed her left wrist).  Accordingly, Plaintiff is not entitled to summary judgment on his Fourth Amendment claim.

    C.  <u>Fourteenth Amendment Bodily Integrity Against Burgess and Antonellis</u>

Also in Count II, Plaintiff claims that Defendants Burgess and Antonellis violated his right to bodily integrity in violation of his substantive due process rights, protected by the Fourteenth Amendment.  The Supreme Court, however, has held that all claims that police officers used excessive force in the course of an arrest or seizure of a citizen are to be analyzed under the Fourth Amendment's reasonableness standard, not the Fourteenth Amendment's conscience shocking standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). *See also Estate of Bennett v. Wainwright*, 548 F.3d 155, 163 (1st Cir. 2008) ("The remaining substantive due

process claim premised on the deprivation of [the plaintiff's] life interest also fails because this is in essence an excessive force claim that should be – and is – brought under the Fourth Amendment."). Thus, Plaintiff is not entitled to judgment as a matter of law on his Fourteenth Amendment claim.

    D. *Monell* Liability against the Town

Plaintiff attempts to hold the Town liable based on its appointment of, and alleged failure to train and supervise, Chief Burgess. To establish municipal liability, a plaintiff must show that "the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989) (citing *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694-95 (1978)). Accordingly, to succeed a plaintiff must show both the existence of an unconstitutional policy or custom and a direct causal link between the policy or custom and the alleged constitutional deprivation. *Id*. at 385. *See also Santiago v. Fenton*, 891 F. 2d 373, 381-82 (1st Cir. 1989). It is well-settled that, absent a constitutional violation, there is no basis for municipal liability for failure to train or supervise police officers. *Kennedy v. Town of Billerica*, 617 F.3d 520, 531-32 (1st Cir. 2010). Because Plaintiff has not shown that he is entitled to summary judgment on a constitutional violation, he is similarly not entitled to summary judgment on his claim against the Town.

    E. Massachusetts Civil Rights Act Against All Defendants

"To state a claim under the MCRA, a plaintiff must show that (1) his exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." *Amirault v. City of Malden*, 241 F. Supp. 3d 288, 304 (D. Mass. 2017)). "Central to proof of a

violation of [the MCRA] is the existence of a right secured by 'the Constitution or laws of either the United States or of the Commonwealth.'" *Maroney as Tr. of Premiere Realty Tr. v. Fiorentini*, 673 F. Supp. 3d 30, 56 (D. Mass. 2023), *appeal dismissed*, No. 23-2066, 2024 WL 4784622 (1st Cir. Oct. 8, 2024) (alteration in original) quoting *K. Hovnanian at Taunton, Inc. v. City of Taunton*, 642 N.E.2d 1044, 1048 (Mass. App. Ct. 1994)).  Because Plaintiff is not entitled to summary judgment on his federal constitutional claims and has not identified any alleged state law violations, he likewise is not entitled to summary judgment on his MCRA claim.

    F.  <u>Intentional Infliction of Emotional Distress Against All Defendants</u>

Plaintiff's final claim is for intentional infliction of emotional distress.  "The standard for making a claim of intentional infliction of emotional distress is very high." *Penate v. Scampini*, 600 F. Supp. 3d 129, 139 (D. Mass. 2022), *aff'd sub nom. Penate v. Sullivan*, 73 F.4th 10 (1st Cir. 2023) (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996)).  A plaintiff must show that the defendant's conduct was "extreme and outrageous," meaning that "it 'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. (quoting *Polay v. McMahon*, 10 N.E.3d 1122, 1128 (Mass. 2014)).  Given that the summary judgment record does not establish that Defendants' conduct was unreasonable as a matter of law, it does not establish that their conduct exceeded all bounds of decency.  Plaintiff is not entitled to summary judgment in his intentional infliction of emotional distress claim.

**V.     Conclusion**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. 94) is denied.  Defendant's Motion to Strike (Dkt. No. 109) is granted insofar as the court has

disregarded alleged facts not based on personal knowledge and consisting of inadmissible hearsay, irrelevant and immaterial statements, and statements unsupported by the cited materials.

It is so ordered.

Dated: September 30, 2025                                       <u>Katherine A. Robertson</u>
                                                                KATHERINE A. ROBERTSON
                                                                U.S. MAGISTRATE JUDGE